## JENKS v. LEHMAN.

1. PRACTICE—LEGAL ACTIONS—EQUITABLE DEFENSES—VERDICT.
When an equitable defense is interposed to an action at law, the only method of taking the advice of the jury is by the submission of special inquiries. A general verdict may not be taken on all the matters involved.
2. APPELLATE PRACTICE.
When the verdict is unsupported by testimony, the judgment will be reversed.

*Error to the County Court of Arapahoe County.*

Mr. WM. T. ROGERS, for plaintiff in error.

Mr. J. A. DEWEESE and Mr. G. Q. RICHMOND, of counsel, for defendant in error.

BISSELL, J., delivered the opinion of the court.

This was an action to recover the balance due on a trust

deed and note which had been given by W. H. McClure on some property in the city of Denver, in 1889. McClure had the title when he gave the trust deed, but less than a year afterwards conveyed it to Daniel Butt, who assumed and agreed to pay the incumbrance. In about six months Butt conveyed to the appellee, Mrs. Lehman, subject to the trust deed, which the purchaser assumed and agreed to pay. The note was not paid at maturity, there was a default in the payment of interest, and Jenks, the holder of the paper, advertised and sold the property and applied the proceeds so far as might be to the payment of the taxes and other charges on the property. This left a balance of nearly $1,500, and Jenks sued Mrs. Lehman to recover this amount. Mrs. Lehman defended and set up that after the expiration of the three years, which was the life of the note, Jenks, for a good and sufficient consideration, extended the time of payment for three years, and averred the note was not due when the suit was commenced. She likewise set up a fraudulent foreclosure and secret advertisement of the property in an obscure paper for the purpose of wrongfully acquiring title. The sale was likewise attacked on the basis of prearrangement for the absence of bidders, and set up the value of the property, and then sought to have the trust deed set aside, and Jenks compelled to reconvey and accept what was due on the note.

The case thus had under the pleadings a double aspect. The affirmative relief which the defendant sought was of an equitable character, and could only be afforded by a decree canceling the sale and setting aside the transaction whereby Jenks presumptively acquired title and compelling a reconveyance of the property. This could not have been obtained as the result of a jury trial. The plaintiff's action was one at law. This the defendant contested because of an alleged agreement for an extension of time, and on that issue the jury would have a right, generally, to pass, but they could not determine whether Mrs. Lehman was entitled to the relief which she prayed. With reference to the equitable

defense, the only method of taking the advice of the jury was by special inquiries, which the court might propound to them, taking their answers if it chose as a basis for its action. Usually, in matters of this description, the equitable side of the case is first tried and then the law issue is subsequently submitted. There can be no objection, however, to the method of trial suggested, but a general verdict may not be taken on all of the matters involved. This is suggested because the case must go back for another trial, and the court can then determine what course it will pursue. There was a general verdict for the defendant and she was permitted to go hence without day, but the court did not undertake to dispose of the issues which she tendered. This might not disturb the judgment, as the appellant was not harmed thereby, but in view of the succeeding trial we are bound to suggest these difficulties.

Two questions are presented by counsel in their briefs. One relates to the character of the consideration which she claimed to have paid for the extension, and the other to what is stated concerning the agreement for the extension of time. We are not largely concerned with the first, because, whether it be or be not true that the payment of interest in advance will be an adequate consideration and deemed sufficient to support an agreement for an extension of time, there was no evidence of the making of any such agreement. We cannot exactly understand how the jury ever arrived at the verdict, but we assume it must have been because of the troublesome times through which the country had passed just prior to the trial of the case. We should not disturb the verdict, but would accept it as conclusive, according to our usual rule, and take Lehman's statement of the extension to the 5th of December, 1895, as adequately supported by the verdict, if the record contained any other evidence on the subject, or if his statement in that regard had been allowed to stand. On cross-examination, however, he entirely destroyed the force and effect of his original testimony and put the agreement as one for no definite period, but simply for a time which

should be coincident with the prompt payment of the interest on the note. Lehman swears: " I had a talk with Mr. Jenks about giving time on the note. He gave no specified time,— so long as I paid up prompt the interest. No specified time was mentioned, nor did I ask him for it." This is all the testimony on the subject. Mrs. Lehman was not offered, nobody else was produced, and the whole thing was denied by Jenks, except as he admitted the collection of interest in June and an extension of the note until the ensuing December. There were some subsequent payments of interest, but the only ones of any value and upon which the appellees could rely were made after they had become due, and seemed to be in accord with the general provisions of the paper with respect to the terms and conditions under which the interest was paid. Even under these circumstances, the judgment would not be disturbed if the matter had been so left to the jury as to make their verdict a specific finding on this subject. The jury were not aptly instructed, nor were they told either in terms or in substance the duty devolved on them to find whether there was an agreement, and if so, for what period and whether the time had elapsed when the foreclosure was begun or concluded by Jenks. Practically this was the only question which ought to have been submitted. In reality no such matter was suggested for their consideration. They were simply told a defense was presented of an extension for a new and valuable consideration, and if they should find a new consideration did move between the owner and holder, then the right of foreclosure was thereby taken away. This in no manner put the issue in an intelligible form and the verdict does not necessarily include the finding of an agreement to extend the time of payment for a definite period. There was no evidence whatever of a new consideration or of any other consideration than what might be found in the payment of the interest. This the appellee was bound to pay, and the payment in advance, if made, only covered a very limited period which had long gone by when the foreclosure was attempted. It is probably true, if the interest was paid

in advance, on the agreement that such payment should be a consideration for the extension, and the parties agreed that the time should be extended accordingly for a fixed period, then the right of foreclosure would not remain with the holder of the paper. We cannot accede to the position that an agreement to extend the time so long as the maker of the note or the person bound thereon should pay the interest promptly would be a valid and operative contract. It would not be in accord with the general business habits of the community, nor do we know of any rule of law which would make an agreement of that sort binding to the extent of a perpetual extension of the time of payment of commercial paper. At all events, there is nothing in the record to show a contract to extend the time other than what was executed and carried out, and there is absolutely nothing in the record on which the verdict of the jury can rest. Of course, if the evidence was in conflict the matter would be a totally different one. But where the difficulty proceeds from the defendant's own testimony, and on this testimony the case has been left entirely unsupported, we are not so far controlled by the verdict as to compel us to affirm the judgment.

The jury were erroneously instructed, the issues were not properly put before them, the verdict is wholly unsupported by any testimony in the record, and for these reasons cannot be upheld. The judgment will be reversed and the case sent back for a new trial.

*Reversed.*